Hanna, Respondent, vs. Kelsey Realty Company, imp., Appellant.

*February 4—February 21, 1911.*

*Foreign corporations: Right to acquire property: Conveyance "wholly void:" Recording acts: Estoppel: Mortgages.*

1. A conveyance of land in this state to a foreign corporation which has not complied with sec. 1770b, Stats. (1898), is not merely voidable at the election of the state, but is absolutely void and a nullity; and any party in interest may take advantage of that fact.

2. A foreign corporation which has no right to acquire property in this state cannot have the benefit of our recording statute (sec. 2241, Stats. 1898); and although a mortgage was unrecorded, the failure or delay of the mortgagee to take steps to give notice of his rights to persons who might purchase the land does not estop him to assert the invalidity of a conveyance to a foreign corporation which had not, at the time of such conveyance, complied with sec. 1770b, Stats. (1898).

APPEAL from a judgment of the circuit court for Polk county: A. J. VINJE, Circuit Judge. *Affirmed.*

The plaintiff was the owner of several parcels of land in Polk county on the 8th day of April, 1908, which lands were incumbered by a mortgage on which there was due the sum of $3,100. Prior to said date the plaintiff and the defendant Johnson entered into a verbal agreement by which plaintiff agreed to convey by warranty deed to said Johnson, subject to said mortgage, the lands referred to. Said Johnson agreed to execute a mortgage back to the plaintiff for the sum of $3,450 to secure his note, which was to be taken as part payment for the purchase price of said lands. Johnson also agreed to convey to the plaintiff certain real estate in St. Cloud, Minnesota. Pursuant to such agreement the plaintiff and his wife executed a deed of the Polk county property to Johnson, and Johnson executed a mortgage to the plaintiff covering the same property and also a deed of the St. Cloud property. The conveyances were delivered on the 8th day of April, and immediately thereafter Johnson requested the plaintiff to permit him to examine the note and mortgage which he had given to plaintiff. The mortgage was handed to Johnson, who thereupon said that there were some back taxes against the lands conveyed and that he would hold the note and mortgage until such time as they were paid. It was thereupon agreed between the parties that Johnson should hold the mortgage until the taxes were taken care of, and that neither the deed nor the mortgage should in the meantime be placed on record. The plaintiff at various times demanded the surrender of the mortgage and of the note which was given to secure such mortgage, which demands were refused, Johnson endeavoring to induce the plaintiff to take in lieu thereof some corporate stock of small or uncertain value which he owned. In the meantime Johnson recorded his deed and conveyed the lands to one Bart. J. Goodwin of Minneapolis, the name of the grantee in the deed being left blank. There-

after Goodwin inserted the name of one Maggie M. Finlay as grantee, and on August 26, 1908, recorded the deed in the office of the register of deeds of Polk county. No consideration was paid by said Maggie M. Finlay for the deed, she permitting her name to be used as grantee therein at the request of Goodwin. The court found on sufficient evidence that Goodwin was not a purchaser in good faith, but took the title with full knowledge of the fraud that Johnson was attempting to perpetrate upon the plaintiff. Thereafter Goodwin sold the lands to the defendant, the *Kelsey Realty Company,* a corporation organized under the laws of the state of Minnesota and authorized by its articles of incorporation to deal in real property, and caused the lands to be deeded to that company by Maggie M. Finlay. The court found that the *Kelsey Realty Company* was a purchaser in good faith for a valuable consideration, but that said corporation failed to comply with the provisions of sec. 1770*b,* Stats. (1898), and that it was not authorized or licensed to transact any business in Wisconsin prior to October 26, 1909. The deed to the *Kelsey Realty Company* was dated September 7, 1908, and was delivered on September 16 and recorded October 9, 1908, in the office of the register of deeds of Polk county. The plaintiff did not learn that the deed from Johnson to Finlay had been placed on record or that any other transactions in reference to the land had taken place until September 25, 1908, and on the 29th day of that month he tendered to Johnson all taxes due against the same and demanded the note and mortgage, which Johnson refused to deliver and which he had in fact destroyed during the month of August. The evidence tends to show that plaintiff knew that Johnson had placed the deed to him on record as early as April 28. The plaintiff commenced an action to enforce his lien for the sum of $3,450 and interest against the premises conveyed to Johnson, and to have the title of Johnson's grantee decreed to be subsequent and subject to his mortgage.

The summons and complaint in this action were filed in the office of the circuit court for Polk county on October 30, 1908, and notice of *lis pendens* was apparently filed on the same day. Maggie M. Finlay executed a quitclaim deed of the lands in controversy under date of November 6th to the *Kelsey Realty Company.* The circuit court found that the deed first executed to the *Kelsey Realty Company* was void because of the failure of that company to comply with the provisions of sec. 1770*b,* Stats. (1898), and that by the subsequent deed of November 6th the corporation acquired the interest of Johnson in said lands subject to the mortgage lien of the plaintiff. It was provided by the judgment that unless the *Kelsey Realty Company* should elect, on or before July 1, 1910, to pay to the plaintiff the sum of $3,450 with interest at six per cent. per annum from April 8, 1908, plaintiff might apply to the court for an order for foreclosure of plaintiff's lien upon the property. From a judgment entered in pursuance of the order of the court defendant prosecutes this appeal.

For the appellant there was a brief signed by *Frank B. Dorothy,* attorney, and *W. N. M. Crawford,* of counsel, and oral argument by *Mr. Dorothy.*

For the respondent there was a brief by *Morris E. Yager* and *Walter L. Chapin,* and oral argument by *Mr. Chapin.*

BARNES, J. It is urged by the appellant (1) that the court was in error in holding that the *Kelsey Realty Company* acquired no title to the lands involved because sec. 1770*b* of our statutes (Stats. 1898) had not been complied with; and (2) that the plaintiff is estopped from setting up any such defense to the action. Some other errors are assigned, but the contentions of the appellant in reference thereto are either untenable or immaterial in view of the conclusion reached, and they will not be discussed.

The appellant was a foreign corporation amenable to the

provisions of sec. 1770*b,* provided it saw fit to extend its activities to the state of Wisconsin and to do any of the things which such corporations are forbidden to do without compliance with the statute. By subd. 2 of the law it is provided that no foreign corporation "shall transact business or acquire, hold or dispose of property" in the state unless it shall have first complied with the requirements of the statute, and by subd. 10 of the law every contract relating to property within this state before compliance with the requirements of the law is declared to be "wholly void" on the part of the corporation making it. It must be conceded that the appellant attempted to acquire property within the state and did so, unless the statute we are considering provides otherwise, and that there was no element of interstate commerce involved in the transaction which takes it outside of the statute. The claim of the appellant is that the statute does not render the transaction void, but voidable only at the election of the state, and that the state only can question the validity of its title and decree a forfeiture.

In support of his contention counsel for appellant invites our attention to a number of cases, which for convenience may be divided into three classes. The first class comprehends those wherein it is held that although aliens are disabled by the common law from acquiring, owning, or holding real estate within a state, yet if an alien does acquire property by grant or descent the transaction is not void, but is voidable only at the election of the state. Such were the cases of *Craig v. Radford,* 3 Wheat. 594, 599; *Governeur's Heirs v. Robertson,* 11 Wheat. 332, 351, as well as other cases that might be cited. The second class comprehends those cases where a corporation acquires real estate without being authorized so to do by its charter or its articles of incorporation and where, therefore, its act in this behalf is *ultra vires.* In such a situation it is generally held that the right, at least of a foreign corporation, to hold property can only be questioned

by persons directly interested in the corporation or by the state whose charter and franchises are being exceeded or abused. Such was the holding in *Ill. S. Co. v. Warras,* 141 Wis. 119, 123 N. W. 656, and in the cases cited on page 126 of the opinion. To the same effect is *Cowell v. Springs Co.* 100 U. S. 55, 60. It should be noted, however, that the rule in *Ill. S. Co. v. Warras* is expressly limited to cases where there is no statutory prohibition against the holding of the property involved. The third class of cases pertains generally to statutes akin to our sec. 1770*b,* although in most instances differing therefrom in some respects. Some courts hold that under such a statute the conveyance is voidable only at the election of the state. It was so held in *Carlow v. C. Aultman & Co.* 28 Neb. 672, 44 N. W. 873, and in *Reed v. Todd* (S. Dak.) 127 N. W. 527, two of the five judges dissenting; also in *Hickory Farm Oil Co. v. B., N. Y. & P. R. Co.* 32 Fed. 22. The case of *McKinley-Lanning L. & T. Co. v. Gordon,* 113 Iowa, 481, 85 N. W. 816, can hardly be said to be authority on the proposition, as the suit involved a contract relating to Nebraska real estate and the Iowa court construed the contract in accordance with the law of Nebraska as announced in *Carlow v. C. Aultman & Co., supra.*

Other courts have held that, where there is a valid statute expressly prohibiting a corporation from acquiring real estate and declaring any conveyance made in defiance of the law to be void, such a conveyance should not be held voidable merely, and that any party in interest might take the benefit of the statute. Such was the conclusion of the New York court in the elaborately considered case entitled *Estate of McGraw,* 111 N. Y. 66, 96, 19 N. E. 233, which decision was affirmed on appeal to the supreme court of the United States, although the decision of that court is not particularly valuable, inasmuch as it followed the construction of the New York statutes placed thereon by its court of appeals. Other cases where the view of the New York court is upheld

are *Wunderle v. Wunderle,* 144 Ill. 40, 64, 33 N. E. 195; *Hanchey v. Southern H. B. & L. Asso.* 140 Ala. 245, 37 South. 272. The same doctrine by inference is found in *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281, 97 N. W. 940, although that case did not necessarily involve a decision of the question.

The New York court differentiates between an act of a corporation which is merely *ultra vires* and one which is in contravention of a positive statute, holding that, while the former may be voidable merely at the election of the state, the other is void and may be taken advantage of by any party in interest.

This court has had before it a number of cases arising out of business transactions by foreign corporations in the state where the statute had not been complied with, as well as cases involving contracts made in the state by such corporations, and has uniformly held that parties in interest might assert the benefit of the statute. See *International T. Co. v. Peterson,* 133 Wis. 302, 113 N. W. 730; *Southwestern S. Co. v. Stephens,* 139 Wis. 616, 626, 120 N. W. 408; *Duluth M. Co. v. Clancy,* 139 Wis. 189, 120 N. W. 854; *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904.

No good reason suggests itself why a party who is affected by a foreign corporation doing business or making a contract in the state in violation of the statute may take advantage of it, while one who is affected by the corporation acquiring or holding property may not do so. All these prohibitions occur in the same sentence in the statute and the penalty is precisely the same as to the violation of each of them.

But more convincing is the fact that this court has unequivocally held that the words "wholly void" as used in the statute "mean just what they say," and that is, "absolutely void and a nullity." *Ashland L. Co. v. Detroit S. Co., supra.* In adopting such construction the court followed the decision in *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964,

wherein the word "void" as used in sec. 692, R. S. 1878, was given a like construction. So, unless we overrule our former decisions, it naturally follows that we cannot adopt for our guidance the pronouncements of courts that elect to construe the word "void" as meaning simply "voidable" in such a statute. It therefore appears that the real question in issue has already been decided, as it would hardly be contended that if the deed to the appellant was "absolutely void and a mere nullity" the plaintiff could not show that fact and take the benefit of it. If its deed was void the appellant took nothing under it and has no right or title to assert by virtue of such deed.

The statute is in fact plain and unambiguous on the question we are considering and leaves little room for construction. Drastic and harsh in its penalties it may be, but the legislature undoubtedly knew that cases involving great hardships might arise because of the statute. The state evidently intended to make the consequences of violating the law so great as to enforce obedience to it. It was within the legislative province to prescribe those penalties and this court cannot soften or mitigate them without violating the law. *Ashland L. Co. v. Detroit S. Co., supra,* and cases cited on page 78. If the construction contended for by the appellant should prevail, the statute in so far as it relates to the acquiring or holding of property in this state would be practically nullified. Even if the state should attempt to assert its right it might be utterly impossible for it to get any service upon the foreign corporation so as to commence any action or proceeding in the courts of this state. It is no great hardship in the present case to hold that the appellant must comply with sec. 1770*b* before it can take the benefit of our recording statute, sec. 2241, Stats. (1898), under and by virtue of which it claims priority over the plaintiff. We hold, therefore, that the conveyance first made to the appellant was not simply voidable, but was void, and that the plaintiff may show that

fact and take the benefit and advantage of it. The ground of estoppel relied on is failure on the part of the plaintiff to take the necessary steps to apprise parties of his rights who might be induced to purchase the real estate. There is no claim that the plaintiff ever had any communication with the appellant in reference to the lands, directly or indirectly, or even that he knew of the corporation. Inasmuch as the appellant could not lawfully acquire the lands until it had complied with the law, and the transaction by which they were acquired was void, the plaintiff did not owe to the appellant the duty of more promptly beginning his action and filing a notice of *lis pendens*. Constructive notice is intended to protect innocent parties who are about to engage in lawful transactions.

*By the Court.*—Judgment affirmed.

VINJE, J., took no part.