MORTENSON, Appellant, vs. MURPHY, imp., Respondent.

*April 10—April 29, 1913.*

*Foreign corporations: Disability to take title to land: Interest of grantee of such corporation: Adverse possession: Tacking: Privity: Statute removing disability: Construction: Validation by grantor of prior conveyance: Mortgages: Foreclosure.*

1. Although a conveyance of land in this state to a foreign corporation which had not complied with sec. 1770b, Stats., was void, yet a grantee of such corporation who went into possession of the land under his deed had an interest therein which he could convey or mortgage, to wit, possession under claim and color of title.

2. One to whom such grantee of the foreign corporation sold and conveyed the land could tack his possession to that of said grantee to make up the ten-year period in which title could be acquired by adverse possession; and so also could purchasers at a mechanic's lien sale who succeeded to his rights.

3. Sufficient privity exists where one claims succession in right by an involuntary conveyance or by operation of law to permit a tacking of possessions so as to secure the benefit of a statute of limitation.

4. Where the original grantee of the foreign corporation mortgaged the land and afterwards sold and conveyed it subject to the mortgage, the right of the mortgagee was superior to that of the purchaser, and the interest acquired by the latter and those claiming under him, including the right of possession and the inchoate right to obtain title by adverse occupancy, might be foreclosed and sold under the mortgage.

5. Ch. 142, Laws of 1911 (sec. 1770j, Stats.), which attempted to cure the defect in the title of foreign corporations to lands conveyed to them before compliance with sec. 1770b, Stats., where they had afterwards complied therewith, did not have the effect to vest the title in such a corporation immediately, but was in the nature of a statute of limitation and allowed the party dealing with the corporation a year in which to disaffirm his contract, and if he did not do so the conveyance in effect became validated.

6. Land in this state had been conveyed to a foreign corporation coming within the terms of ch. 142, Laws of 1911. Such corporation conveyed to one Clare, who took possession and thereafter mortgaged the land to a bank, and then sold and conveyed it, subject to the mortgage, to one Morse. Through fore-

closure of a mechanic's lien and subsequent conveyances the interest of Morse became vested in Murphy. After the enactment of the law of 1911 the original grantor of the foreign corporation quitclaimed to the mortgagee bank, and the bank thereafter quitclaimed the land and assigned the mortgage to plaintiff. In an action against Murphy and others to foreclose the mortgage, plaintiff having elected to take the position that defendants had an equity of redemption in the premises, it is *held* that the purpose of said original grantor in quitclaiming to the bank was to validate his conveyance to the foreign corporation and thereby to place all parties in the same position they would have occupied had the corporation been competent to receive and to transfer title in the first instance; hence that the mortgage is the prior and paramount lien and should be foreclosed accordingly.

APPEAL from a judgment of the circuit court for Portage county: BYRON B. PARK, Circuit Judge. *Reversed.*

On February 1, 1907, Rosenbaum, being the owner of the real estate in controversy, conveyed the same to the Western Land Securities Company, a foreign corporation, which had not filed its articles of incorporation as required by sec. 1770*b,* Stats., and which did not comply with the law in this regard until August 7, 1909. After receiving the conveyance from Rosenbaum the corporation contracted to sell the property to one Clare. On April 17, 1907, the corporation deeded the land to Clare by a deed of warranty and Clare went into possession of the same under his deed. On May 7, 1908, Clare executed the mortgage in suit to the Westfield State Bank. On the same day Clare conveyed the premises by warranty deed to the defendant Morse, subject to the $3,000 mortgage which he had given to the bank. Morse continued in possession of the premises for some time and purchased materials which were used in repairing the buildings thereon. A mechanic's lien was filed by one of the parties furnishing material, and foreclosure proceedings were instituted thereon, and a judgment was entered establishing a lien on all of the right, title, and interest of Morse in the premises and declaring such lien to be paramount to the rights of any party

claiming an interest in the premises subsequent to the time when the material was sold and delivered. On January 10, 1910, the interest of Morse and of all persons claiming through or under him after June 15, 1908, was sold to satisfy the mechanic's lien claim aforesaid, the sheriff's deed reciting that the premises were sold for $280, subject to the mortgage of the Westfield State Bank. The purchasers at the sale were John and Hugh Hamilton, and on August 6, 1910, the Hamiltons quitclaimed to the defendant *Margaret Murphy*. Three days later she went into possession. On September 11, 1911, Rosenbaum executed a quitclaim deed of the premises in suit to the Westfield State Bank. On November 24, 1911, the Westfield State Bank quitclaimed the premises to the plaintiff and on November 17th assigned its mortgage to him. This action was brought in March, 1911, to foreclose the mortgage. On May 13, 1911, ch. 142 of the Laws of Wisconsin for the year 1911 was published, and on July 22, 1911, ch. 664 of the Laws of 1911 was published, sec. 12 of which latter act amended the former. The defendant *Margaret Murphy* appeared and answered by way of defense and counterclaim. She alleged that her title and right of possession to the premises gained under the mechanic's lien foreclosure proceedings were prior and paramount to the right of the mortgagee and that she also had a substantial claim for betterments. Part of the relief demanded was that the quitclaim deeds from Rosenbaum to the bank and from the bank to the plaintiff be canceled and set aside as a cloud on her title. Other essential facts upon which the defendants relied will be stated in the opinion. The trial court held that the defendants *Margaret* and C. C. Murphy were entitled to judgment dismissing the complaint; that *Margaret Murphy* was entitled on her counterclaim to a judgment determining her right to and interest in the lands to be of the value of $1,200 because of permanent improvements placed thereon after she went into possession, and that she

had an interest therein for the additional sum of $710 because of permanent improvements placed thereon by the defendant Morse, which she owned through her purchase under the foreclosure proceedings; that she was entitled to a judgment quieting her title to the premises in dispute as against the plaintiff and her codefendants, except her husband; and that the quitclaim deeds referred to were a cloud on the title which should be removed by a judgment of the court. From a judgment entered in accordance with the findings of fact and conclusions of law the plaintiff appeals.

For the appellant there was a brief by *John A. Conant, Rogers & Rogers,* and *W. S. Stroud,* and oral argument by *Mr. Stroud* and *Mr. Harlan Rogers.*

For the respondent there was a brief by *Ryan & Kelm,* and oral argument by *E. H. Ryan.*

BARNES, J. The trial judge reached the conclusion that the deed from Rosenbaum to the corporation was void as to the corporation because of noncompliance with the provisions of sec. 1770*b,* Stats.; that the corporation having no title could convey none to Clare, and that Clare had nothing which he could mortgage to the bank or deed to the defendant Morse, and that therefore the mortgage was void and of no effect and could not be foreclosed.

He further held that the effect of ch. 142, Laws of 1911, was to validate the deed from Rosenbaum to the corporation and vest title in the latter, but that the grantees of the corporation did not derive any benefit from the statute because it did not affect pending actions. He further concluded that, the statute referred to having divested Rosenbaum of his title and vested it in the corporation prior to the conveyance by quitclaim deed to the bank, he had no title to convey when this deed was executed, and that therefore neither the bank nor the plaintiff secured any interest under the quitclaim deeds.

When Clare executed the mortgage to the bank he was in

possession of the premises in controversy, claiming title under a warranty deed from the ostensible owner of the record title. His occupancy was adverse and hostile to the world. If it continued for a period of ten years his title would become absolute. He had an interest which he could convey, to wit, possession under claim and color of title. His grantee, by virtue of the deed of conveyance to him, could materially shorten the necessary period in which to acquire title by adverse possession. It is quite obvious that under such a statute as our sec. 4211 Clare had some interest which he could grant by deed. This being so, the right or interest could be mortgaged. Any interest in real property that "is capable of an absolute sale may be the subject of a mortgage." *Bull v. Shepard,* 7 Wis. 449, 461. The right of the mortgagee was prior in time and right to that of the purchaser from Clare. Morse took the possession and the inchoate right to obtain title by adverse user, subject to the rights of the mortgagee. He could tack his possession to that of Clare to make up the ten-year period. The purchasers at the mechanic's lien sale succeeded to the rights of Morse only. There was such privity between them and Morse that they and their grantees could tack their possession to that of Morse and Clare and claim title by adverse occupancy as against the holder of the legal title ten years from the date that Clare took possession, if the successive possessions were continuous. Sufficient privity exists where one claims succession in right by an involuntary conveyance or by operation of law to permit a tacking of possessions so as to secure the benefit of a statute of limitation. *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 508, 509, 82 N. W. 534; Wood, Limitations (3d ed.) sec. 271; 1 Cyc. 1003 and cases cited in note 62; 2 Am. & Eng. Ency. of L. & P. 453 and cases cited. In so far as the plaintiff and *Mrs. Murphy* are concerned they must claim title through a common grantor, if they claim title at all. We see no reason why the interest transferred to Morse might not be foreclosed and that interest which included the right

of possession be sold and transferred to the mortgagee.    We
therefore conclude that it was error to dismiss the complaint
in the foreclosure suit.

The only remaining question which it is necessary to treat
is the effect of the quitclaim deeds from Rosenbaum to the
bank and from the bank to the plaintiff.    If the corporation
took nothing under the deed from Rosenbaum, then Rosen-
baum did not part with his title.    The ownership of the prop-
erty rested in some one and that some one must be either
Rosenbaum or his grantee.    If it went to the grantee the
mortgage would be entirely regular.    If it did not, then
Rosenbaum had the right to dispose of the property to whom-
soever he saw fit.    He evidently did not want to take advan-
tage of the technicality which would permit him to sell the
premises a second time, and he deeded to the bank, the then
holder of the mortgage, for the apparent purpose of validat-
ing the attempted transfer of the property by the corporation.
He had a perfect right to do this. The circuit judge con-
cluded that under ch. 142, Laws of 1911, whatever title Ros-
enbaum had was vested in the corporation and that therefore
he had nothing to convey and his grantees took nothing by
the conveyance.    The learned circuit judge was also of the
opinion that the grantees of the corporation, under the war-
ranty deed which it had given, could not claim any benefit
from the after-acquired title of the corporation because the
statute did not affect pending actions.

If the statute did not affect pending actions, then we think
it would not operate to transfer title from Rosenbaum to the
corporation, because the present action was pending when
the statute was passed.

We do not decide that the legislature could not pass a stat-
ute such as the trial judge construed this to be.    The question
is not before us, because the effect of the law was not to im-
mediately transfer title to the corporation from its grantor.
The statute reads as follows:

"1. Any corporation organized otherwise than under the laws of this state, having acquired, or attempted to acquire, legal title by deed, or lease to any real property in this state, before complying with the terms of section 1770*b* of the statutes, or acts amendatory thereof, and which has thereafter, and before the passage of this act, complied with said section, shall be and is hereby relieved from any disability provided in said statute or prohibition therein contained, so far as said section relates to the acquisition and holding of the property so acquired, or attempted to be acquired.

"2. Any person claiming that the legal title of any corporation or of any person claiming by, through, or under such corporation, to any real property acquired, or attempted to be acquired, is invalid by reason of the failure of any corporation coming within the terms of subsection 1 of this act, to comply with section 1770*b* of the statutes, or acts amendatory thereof, shall commence action to recover the property, or to declare the legal title of said corporation void, or interpose a defense on such grounds, within one year from the passage and publication of this act, and in case of failure to do so his right of action or defense, based upon the failure to comply with said section by any such corporation, shall be deemed to have expired; provided that this act shall not affect any action now pending." Laws of 1911, ch. 142.

This is in the nature of a statute of limitation. It makes it incumbent on the party dealing with the corporation to assert his right by action or defense within one year from the passage of the act. If he does not do so, he will be barred from thereafter making a claim. Title was not taken away by the statute. It could be asserted at any time within the period stated. If it was not so asserted, the corporation in effect got title at the expiration of the year by force of the statute. The act allowed the party dealing with the corporation a year in which to disaffirm his contract. If he did not do so, it in effect became validated. This is the construction placed on the act in *Lanz-Owen Co. v. Garage E. M. Co.* 151 Wis. 555, 139 N. W. 393.

The effect of the quitclaim deeds from Rosenbaum to the

bank and from the bank to the plaintiff was either to convey the title to the plaintiff or to validate the transfers originally made from Rosenbaum to the corporation and from the corporation to Clare. If the first effect followed, then the quitclaim deeds should not have been canceled, because the plaintiff's title was paramount to any claim of title which the defendants had. *Roehm v. Zehren,* 103 Wis. 287, 79 N. W. 216. If the second result followed, then the plaintiff was clearly entitled to foreclose his mortgage. The plaintiff has elected to take the position that the quitclaim deed did not in fact convey the entire title and that the defendants had an equity of redemption in the premises. The defendants are benefited by this election, inasmuch as it gives them the right to redeem from the plaintiff's mortgage. While the conveyance from Rosenbaum was not made to the immediate grantee of the corporation, it was made to the party who had made the largest investment in the premises on the belief that the deeds to and from the corporation were valid, and we think it should be held that it was the purpose of Rosenbaum to validate his transaction with the corporation when he gave the subsequent quitclaim deed and to place all parties in the same position that they would have occupied had the corporation been competent to receive and to transfer title in the first instance. Under this holding the plaintiff's mortgage is prior and paramount to the interest acquired by Morse and to the interest of those claiming under the foreclosure proceeding in the mechanic's lien case. It follows from what has been said that the judgment must be reversed, and the cause remanded with directions to enter a judgment of foreclosure and sale in the action for the amount due on the mortgage.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to enter a judgment of foreclosure and sale in accordance with this opinion.